16308. EBERHART *v.* SEABOARD AIR-LINE RAILWAY COMPANY.

The proximate cause of the injury in question, as shown by the plaintiff's petition properly construed, was not the alleged condition of the rail-road-bridge over which she was being driven in an.automobile, but the

negligence of the person operating the car, who was driving it at excessive speed, on a dark and rainy night.

The petition failed to set out a cause of action, and the court properly sustained the general demurrer thereto.

DECIDED MAY 14, 1925. ADHERED TO ON REHEARING, JULY 16, 1925.

Action for damages; from city court of Athens—Judge Bradwell. February 17, 1925.

Application for certiorari was denied by the Supreme Court.

Miss Nellie Eberhart sued the Seaboard Air-Line Railway Company for damages because of personal injuries. The petition alleged: "Said defendant has a line of tracks running in Athens, in said county, westward toward Atlanta, Ga., and in said Clarke County, Georgia, runs under an overhead bridge on what is known as the Athens-Jefferson road." "Said bridge is a wooden structure, about 80 feet long, being a portion of said public highway, which is paved with concrete on either side of said bridge." "The said public road was in existence before the construction of said railroad, and said bridge was built by, and has been maintained since by said defendant, Seaboard Air-Line Railway Company." "On April 10, 1924, the said bridge consisted of uprights leading from the level of the railroad track, with stringers thereon, and a plank flooring on said stringers running for about 80 feet from edge of concrete to edge of concrete on said public highway. Said flooring was between 35 and 40 feet above the level of the railroad-track." "At this bridge defendant runs through a cut, the bottom of which is about 25 feet across, with banks sloping back towards each end of said bridge." "On each side of said bridge there was at said time a railing supported at intervals of 6 feet by upright posts extending 40″ above the flooring. Said uprights were made of pine timbers, being 5″ by 5″. At the edge of the flooring said 5″ by 5″ were cut back half their width, and the lower part of said uprights nailed to the stringers of said bridge with three nails of twenty penny each." "Along said uprights, for the full length of the bridge, were nailed planks, being 2″ by 6″ and 12 feet long. The top plank was along the upper end of the upright 40″ from the flooring, and the second plank was midway to said flooring." "The only support and bracing which this railing had was an inside brace from the flooring to the upright. This brace was made of 4 by 4, and was cut away at each end so that the said brace was 16″ long on the inside of said bridge, and 6″

on the inside against said upright. This brace was nailed to the flooring on the inside by three 20-penny wire nails, and was nailed to the upright by three 20-penny wire nails. This brace extended out into the flooring proper of the bridge and in the roadway 12″, and was nailed to the upright 9″ above the level of the floor." "These braces were nailed to each upright on each side of said bridge at intervals 6 feet apart." "There was no support of any kind whatever to said railing from the outside of said bridge." "There is a slight curve in said bridge, and in going from Athens to Jefferson, a direct line down the concrete roadway, and the middle of same for a distance of a quarter of a mile would extend across said bridge about two thirds of its length, and still further extended would leave the bridge and strike the opposite edge of the cut going towards Jefferson, at about ten feet from the left-hand side of said bridge going out." "At said point and about 10 feet from the edge of said bridge and on said defendant's right of way and land, there were on said date two signs, one an advertisement of Exide Battery, and the other an advertisement of H. J. Reid Clothing Company." "The Exide sign had been on said right of way at said point for more than four years before the date set out herein, and H. J. Reid Clothing Company sign had been at said point for more than six months before said accident, with knowledge and approval of defendant." "Both of said signs were facing towards Jefferson. The Exide sign was about 4 feet by 12 feet, with the back of same looking towards Athens, covered with black paint, and the back of the Reid sign being blank tin." "On a dark night with rain on said signs the back of same would catch the light from the headlights of automobiles going from Athens towards Jefferson, while approaching said bridge and for a distance of two thirds across said bridge, and would present the same appearance to the driver of said automobile as the concrete roadway would on such a night and under such conditions leading from the Jefferson end of said bridge."

"On the night of April 10, 1924, Dr. J. P. Proctor, a physician and surgeon of Athens, Ga., was proceeding from Athens towards Jefferson along the roadway as described herein, and reached said bridge between eleven and twelve o'clock p. m." "Dr. Proctor had with him, as passengers in said automobile, Miss Irene Day, and the plaintiff herein, Miss Nellie Eberhart." "On reaching

said bridge  said automobile traveled across said bridge until the left-half hub of the front wheel, or the left-hand front fender on said automobile struck the lower plank of the railing of said bridge at a point 40 feet from the Athens end of the bridge.  At the time of said impact said car was traveling between 20 and 25 miles an hour.  The impact caused the left rear of the automobile to swing towards the left side of the bridge, and the next brace towards Jefferson, as hereinbefore described, extending out in the roadway, caught the wheel of said automobile, slinging the weight of the car towards the left of said bridge going out and pushing over said railing away from said bridge and towards Atlanta.  "The said automobile dragged along the edge of said bridge until just before reaching the Jefferson side of the cut under said bridge, and there struck about 3 feet below the edge of the embankment, and from that point was precipitated to the bottom of the cut and alongside of the railroad tracks, landing in an upright position."  "On this fall of 35 or 40 feet plaintiff was thrown out of said car, with her right hand pinned under the wheel of said car, and remained there in an unconscious condition for five or six hours until rescued."  "On the night in question rain had begun to fall from Athens to said bridge and to beyond before 8 o'clock, and it was raining at the time the injuries complained of were received, and it continued to rain for hours thereafter, and during all the time plaintiff was pinned under said car."

By amendment the plaintiff alleged, that "on the night of the injury complained of, Miss Eberhart was accompanying Dr. Proctor in his automobile as a servant or employee.  She was a trained nurse in the employ of Dr. Proctor, and was paid by the said Dr. Proctor a fixed monthly sum.  She had no interest in the journey of her own, and was to receive no more or less money by reason of said journey."  "Dr. Proctor was on his way from Athens towards Jefferson to answer a call in his professional capacity as a doctor."  "At the time of the injury complained of the night was dark and a heavy rain was falling."  The allegation that the defendant was negligent in not having on the side of the bridge a railing which could deflect the blow of a vehicle driven at a reasonable rate of speed was amended by adding, "such a rate of speed as should have been anticipated by the defendant company to be used by autoist on a dark and rainy night when the reflection

from the signs of the automobile light should produce the illusion to the autoist that no bridge existed, or that there was any curve in the road." It was also alleged by amendment that "the driver of said automobile, Dr. Proctor, at the time of striking said bridge, thought that he was still upon the concrete highway, and did not know that he had reached the bridge by reason of the reflection of his lights upon the back of the signs as herein described, and because said bridge was not painted white, but had the dull color of weathered undressed lumber."

The petition and amendments thereto alleged that plaintiff was without fault in the premises, set out the injuries sustained and the resulting damage to her, and alleged that the injuries were caused by the negligence of the defendant in the following particulars: Defendant was negligent in building and maintaining its bridge without having a railing on the side of the same which could deflect the blow of an automobile or vehicle driven at a reasonable rate of speed; in not having said railing braced from the outside; in bracing said bridge from the inside; in allowing the braces on the inside to extend into the roadway; in allowing the erection and maintenance of said signs on its right of way and property in the line of the roadway and bridge extending thereto, in that defendant knew that on a rainy night the backs of said signs would glisten and reflect the lights of an approaching automobile so that said reflection would seem a continuation of the road to the driver of said automobile; and in not having said bridge painted white.

The defendant demurred both generally and specially to the petition and amendments thereto, the substance of the demurrers being that the petition showed on its face that the alleged negligence of the defendant was not the proximate nor direct cause of the injury, and "that the act of the said J. P. Proctor, in the operation of said automobile, was the natural, direct, and proximate cause of said alleged injury;" that the said Proctor's driving upon said bridge "at a rate of speed in excess of six miles per hour" was negligence per se, and was the proximate cause of the alleged injury, and that the defendant exercised no control over Proctor in the driving of the automobile; that the dark night and the rain directly contributed to the alleged injury, and that the defendant had no control over the elements; that there was no legal duty on the defendant to construct a bridge with guard-

rails sufficiently strong to withstand the impact of an automobile going at the rate of 20 to 25 miles an hour.

The trial court sustained the general demurrer to the petition as amended, and the plaintiff excepted.

*Lamar C. Rucker, Joel & Elliott, Gerdine Lumpkin,* for plaintiff.
*John B. Gamble, Erwin, Erwin & Nix,* for defendant.

LUKE, J. (After stating the foregoing facts.) The controlling issue in this case is: What was the proximate cause of the alleged injury as shown by the amended petition? After a careful study of the record and of numerous decisions, we are convinced that the real, direct, proximate cause of the alleged injury was the operation of the automobile by Dr. Proctor, and that the court properly sustained the general demurrer to the petition. Assuming the allegations of the petition to be true, for the purpose of testing it as against a general demurrer, these alleged negligent acts of the defendant company were not the proximate cause of the alleged injury. While the mission upon which he was going may have, from a moral standpoint, justified Dr. Proctor in traveling at the rate of 20 to 25 miles an hour on a bridge, on a dark and rainy night, and the darkness and the rain may have caused him to misjudge the roadway, still these are circumstances over which the defendant company had no control, and the fact remains that if Dr. Proctor had driven at a proper rate of speed and properly steered the automobile in approaching and driving upon the bridge, he would have gone across in safety, regardless of the alleged defective guard-rails or the advertising signs, and the accident would have been avoided; and his failure to do so was the real, direct, and proximate cause of plaintiff's injury. "The proximate cause of an injury is that cause which immediately precedes and directly produces the injury, without which the injury would not have happened. . . So long and so far as an ultimate result can be traced to a first cause, though through successive stages, the responsibility rests with the one who put in operation the chain of events which caused the wrong or injury. . . The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss. . . The proximate cause of an accident is a cause without which the accident would not have occurred. . . The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation."

Words & Phrases, vol. 6, p. 5762. Questions of diligence and negligence being peculiarly for the jury, the court will decline to solve them on demurrer, "except in plain and indisputable cases;" but "where it clearly appears from the petition that the negligence charged against the defendant was not the proximate and effective cause of the injury, . . the court may upon general demurrer, as a matter of law, so determine." *Martin* v. *McAfee, 31 Ga. App. 695* (122 S. E. 72). "To entitle a party to recover damages of a railroad company on account of the negligence of its agents, it should appear that the negligence was the natural and proximate cause of the injury; for should it appear that the negligence of the railroad company would not have damaged the party complaining but for the interposition of a separate independent agency, over which the railroad company neither had or exercised control, then the party complaining can not recover." *Perry* v. *Central Railroad, 66 Ga. 746* (5). While the plaintiff, in the enumeration of the alleged negligent acts of the defendant company, made reference to "such a rate of speed as should have been anticipated by the defendant company," yet the petition shows that "said car was traveling between 20 and 25 miles an hour" at the time of the impact. See Park's Code Supp. (1922), vol. 8, 828(dd); Ga. L. 1921, sec. 2, p. 256. There was no legal duty on the defendant company to construct the guard-rails of the bridge sufficiently strong to withstand the impact of an automobile going at the rate of twenty to twenty-five miles per hour. *Corley* v. *Cobb County, 21 Ga. App. 219* (93 S. E. 1015).

When the amended petition as a whole is construed most strongly against the plaintiff, it fails to show either that the alleged negligence of the defendant was the direct or proximate cause of the injuries sued for, or that it was a contributing factor thereto. On the contrary, the petition, properly construed, clearly shows (despite its allegations of the defendant's contributory negligence) that the gross and criminal negligence of the driver of the automobile (in which the plaintiff was riding as a passenger and employee of the driver when she was injured) was the direct, proximate, and sole cause of the plaintiff's injuries. The court, therefore, properly dismissed the petition on demurrer.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*