## A96A0117. COWETA COUNTY et al. v. ADAMS et al.
### (473 SE2d 558)

Judge Harold R. Banke.

Barbara Jean Bell was killed and her two passengers, Edward F. Adams II, and Joseph Thierry, Jr., (collectively "Adams") were seriously injured when their pickup truck struck a railing on the Andrew Bailey Road Bridge ("bridge") in Coweta County.[1] Adams sued the tire manufacturer, a car dealership, the Georgia Department of Transportation (DOT), Coweta County, the Coweta County Department of Public Works and unnamed employees of Coweta County (collectively "County").[2] We granted the County's interlocutory appeal to review the denial of its motion for summary judgment.

To prevail at summary judgment under OCGA § 9-11-56, the County, as movant, must demonstrate that there is no genuine issue of disputed material fact, and that the undisputed facts, viewed in the light most favorable to Adams, the non-movant, warrant summary judgment as a matter of law. OCGA § 9-11-56 (c). *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the evidence was as follows: As the Chevrolet S-10 pickup truck which Bell was driving approached the County's bridge, the left rear tire blew or lost air pressure. As Bell was attempting to regain control of the vehicle, the left front corner of the truck struck a portion of the bridge railing. The railing allegedly impaled Bell, and a lower portion of railing ruptured the gas tank causing the pickup to burst into flames. Due to the truck's continued momentum, and allegedly because of poor quality of maintenance and repair, the railing gave way and allowed the truck to plunge down an embankment to the creek below turning upside down as it traveled. Adams claimed, inter alia, that the County negligently installed, repaired and maintained the bridge and the railings. Adams alleged that when the bridge was rebuilt in August 1990, the County failed to obtain a performance bond as required by law and that County liability accrued under OCGA §§ 32-4-70 and 32-4-71 (b).

In opposition to summary judgment, Adams presented evidence that the welds affixing the horizontal portions of the rail to the vertical portions were faulty due to improper welding at the time of construction, the County used improper welding equipment, and untrained prison laborers performed some welding repairs. One of Adams' experts, James Burke, testified that when the defective welds gave way, instead of stopping the truck, the railing penetrated

---

[1] The parties refer to the structure at issue as a "guardrail" and a "handrail." However, a more apt description would be a "bridge rail" or "bridge railing."

[2] Uniroyal Goodrich Tire Company, the tire manufacturer, the car dealership, the Georgia DOT and its named employees are not part of this appeal.

the truck and the driver. The expert testified that had the rail been properly welded, it would have collapsed upon impact in an accordion-like fashion instead of piercing the truck. Burke opined that the truck would likely have remained on the bridge and sustained moderate front end damage. Burke testified that the defective welds were obvious, discoverable upon visual inspection, and that some welds were so deficient as to have been only ten percent effective. Another expert, Carl Matricardi, testified that the welds were poorly done and not complete, and that the "fact the weld was missing allowed that thing to literally spear through the vehicle." Matricardi attested that had the railing been properly welded, the metal would have twisted, slowing the vehicle down or stopping it. Thierry, the only adult passenger, testified that Bell braked, straightened the truck's path, and seemed to have regained control of the vehicle just as it hit the rail. According to a Georgia DOT inspection report, which the DOT provided to the County, the railings on the bridge were non-conforming to American Association of State Highway and Transportation Officials (AASHTO) guidelines which were in effect at the time of the DOT's inspection.[3] Although the County alleges eight enumerations, its appeal focuses on the issues of negligence and proximate cause. *Held*:

At the outset, we emphasize the unique factual circumstances underlying this case. First, the incident at issue occurred on November 11, 1990, prior to the effective date of the 1991 amendment to Art. I, Sec. II, Par. IX of the Ga. Constitution of 1983, and therefore, Coweta County is not entitled to sovereign immunity. *Adams v. Coweta County*, 208 Ga. App. 334 (1) (430 SE2d 599) (1993). Second, with respect to the alleged maintenance and repair defects, the County conceded its liability under OCGA § 32-1-3, stating, "Coweta County acknowledges that it may be liable for all injuries caused by reason of any defective bridges, whether erected by contractors or county authorities."[4] The holding of this case is obviously restricted to these most unusual facts, and will not judicially create liability for counties in Georgia for negligence claims relating to bridges or bridge railings. Under current law, negligent bridge claims are essentially foreclosed by sovereign immunity, and no county liability was created by OCGA § 32-4-1 et seq. *Kordares v. Gwinnett County*, 220 Ga.

---

[3] Part of Adams' evidentiary burden at trial will be to prove that the County knew that the railings at issue were not maintained in a "workman-like manner" and that the alleged deficiencies caused the injuries. Contrary to the dissent's contention, this opinion neither requires nor suggests that government entities bring public structures up to current AASHTO standards.

[4] Despite the County's apparent concession, OCGA § 32-1-3 does not create liability for counties for defects in bridges. Under former Code 1933, § 95-1001, counties had liability for defective bridges.

App. 848 (470 SE2d 479) (1996). Contrary to the mistaken alarm sounded by the dissent, nothing in the holding here requires counties to bring non-conforming public structures up to national standards nor mandates any change in governmental liability. In fact, the holding of *Kordares*, supra, effectively precludes the far-reaching liability implications purportedly feared by the dissent.

1. Adams' evidentiary showing of disputed issues of material fact regarding the County's alleged negligence precludes summary judgment. Adams' evidence was that the County occasionally used untrained prison laborers to do welding repairs on the bridge, the welding had been improperly performed, the defective welding created a dangerous condition and the railing failed to conform with industry standards. Because there are unresolved issues of material fact as to the County's alleged negligent construction, maintenance and repair of the railing at issue, the trial court's denial of summary judgment to the County on the issue of negligence was proper. *Storer Communications v. Burns*, 195 Ga. App. 230 (393 SE2d 92) (1990).

2. The trial court correctly determined that proximate cause under these facts is an issue for jury determination. The County contends that regardless of any alleged negligence on its part, it cannot be held liable because any act or omission on its part did not proximately cause the injuries. Although the County conceded statutory liability under OCGA § 32-1-3, for injuries caused by reason of defective bridges, it claimed that its statutory duty was only to "construct and maintain" the bridge in "a workman-like manner" so that the bridge could be used in ordinary travel but not for extraordinary occasions such as where a sudden emergency causes the driver to lose control of the vehicle. *McDaniel v. Southern R. Co.*, 130 Ga. App. 324 (203 SE2d 260) (1973). However, whether the bridge was constructed and maintained in a "workman-like manner" is disputed. See Division 1.

The County's reliance on *McDaniel* is misplaced because in that case, the driver's act of falling asleep was determined to be the sole proximate cause of the accident. Id. at 326. Because a county had no duty to anticipate a sleeping driver operating a vehicle on a bridge, we determined that specific activity fell within the "domain of the unusual and extraordinary" and was unforeseeable as a matter of law. Id. In this case, as the trial court noted, a blown tire is not an unusual or extraordinary occurrence, and "guard rails are often placed upon bridges for the very reason that it is foreseeable that a driver may lose control of his vehicle and leave the roadway." Moreover, in *McDaniel*, there was no defect in the bridge which was a contributing cause toward rendering the vehicle uncontrollable. Id. Whereas in this case, Thierry testified that as Bell was in the process of regaining control of the vehicle, she was impaled by a portion of

railing, which if true, could have been a contributing cause toward rendering her vehicle uncontrollable. Nor can it be said as a matter of law that it was unforeseeable that the rail's inability to properly collapse would cause injury when the rail was struck by a driver whose vehicle left the roadway.

Nor would a different result be demanded by the case relied upon by the dissent, *Ga. Power Co. v. Collum*, 176 Ga. App. 61, 63 (3) (334 SE2d 922) (1985). In *Collum*, the pivotal issue was not "ordinary use" of the roadway but proximate cause and foreseeability. Id. In that case, we employed a foreseeability analysis and determined that proximate cause was lacking because no act of Georgia Power was the cause of Collum's injuries since the separate and independent act of an earlier driver, who struck and broke a utility pole knocking a span guy wire into the roadway, broke the chain of causation to Collum's injuries. Id. at 64 (3). Questions of proximate cause are peculiarly reserved for jury determination except in clear, plain, and undisputed cases. *Lozynsky v. Hutchinson*, 159 Ga. App. 715 (285 SE2d 70) (1981); *Lockhart v. Walker*, 124 Ga. App. 241 (183 SE2d 503) (1971). This is not such a case.

Finally, we reject the County's conclusory position that Bell's loss of control of the truck was the sole proximate cause of the injuries sustained. A jury must determine whether the combined negligence of the County and another party caused the injuries at issue. See *Burns*, 195 Ga. App. at 232. Where separate and distinct but concurrent acts or omissions of negligence of different parties are the proximate cause of one indivisible injury, compensation for the entire loss may be recovered from either or both of the responsible parties. *Gay v. Piggly Wiggly Southern*, 183 Ga. App. 175, 178 (2) (358 SE2d 468) (1987). As we have previously noted, there may be more than one proximate cause of an injury. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 157 (1) (B) (256 SE2d 916) (1979).

3. Having determined that material issues of disputed fact remain for jury resolution, we need not address the remaining enumerations.

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Smith, J., dissents. Andrews, J., not participating.*

SMITH, Judge, dissenting.

I must respectfully dissent, because *McDaniel v. Southern R. Co.*, 130 Ga. App. 324, 325-326 (4) (203 SE2d 260) (1973), clearly controls the extent of the county's responsibility for the maintenance of structures adjoining the public roadway. To hold otherwise will radically change the established law of Georgia governing such structures and impose a consumer products liability analysis which is inappropriate

in this instance.[5]

The facts of *McDaniel* are virtually identical to those presented here: a driver left the roadway and was impaled by an allegedly defective railing on a bridge approach. The only distinction is that the loss of control in *McDaniel* was caused by the driver falling asleep at the wheel instead of a blown tire. Contrary to the majority's assertion, however, this variance is not a valid distinction, because it is completely immaterial to the holding. *McDaniel* explicitly states its analysis in terms of *proximate cause*: "[T]his falls within the 'domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable,' there being no defect in the bridge *which was a contributory cause* toward rendering the automobile uncontrollable. [Cit.]" (Emphasis supplied.) Id. at 326 (4).

Whether the collision is caused purely by driver error, as in *McDaniel*, or an alleged product defect combined with alleged driver error, as in this case, the proximate cause is not the bridge railing. In fact, proximate cause in this case is even more attenuated than in *McDaniel*, because there is one more link in the chain of causation: the allegedly defective tire. The proximate cause analysis and case law employed in *McDaniel* have been approved regularly and recently by this Court. See, e.g., *Gray v. Gober*, 185 Ga. App. 624, 627 (365 SE2d 279) (1988), citing *Ga. Power Co. v. Murray*, 57 Ga. App. 141, 149, 150 (194 SE 403) (1937); *Atlanta Obstetrics &c. Group, P.A. v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990), citing *Eberhart v. Seaboard Air-Line R. Co.*, 34 Ga. App. 49, 54-55 (129 SE 2) (1925). The proper application of this analysis does not leave the plaintiffs here without a remedy or recovery; the tire manufacturer remains a defendant, and it appears that its product, if defective, was the proximate cause of the collision.

While almost directly on point here, the *McDaniel* decision is only one case in a large body of Georgia law governing liability for structures adjoining the public way. For liability to be imposed, such structures must impinge on the traveled way, i.e., make contact with a vehicle while it has its wheels on the road. If the driver had to leave the roadway to contact the structure, there is no liability. *"Ordinary use of the public streets and highways contemplates use as provided by law. Stated another way, when the public streets and highways are used in such a manner as to violate the law, such use is not 'ordinary.' "* (Citations and punctuation omitted; emphasis supplied.) *Ga. Power Co. v. Collum*, 176 Ga. App. 61, 62-63 (1) (334 SE2d 922)

---

[5] The issues raised here would not have been reached, however, but for the county's concession, noted in the majority, that it could be held liable for injuries caused by reason of defective bridges under OCGA § 32-1-3. See *Kordares v. Gwinnett County*, 220 Ga. App. 848 (470 SE2d 479) (1996).

(1985).

Despite the majority's attempt to employ a foreseeability analysis more appropriate to consumer products liability law, that standard is clearly improper in the context of structures beside the public roadway: "In the context of the instant case, appellant is not being sued as the manufacturer of any defective personal property sold as new property." Id. at 61 (1). Focusing on this alleged bridge defect as though it were a consumer product defect is a major alteration of the established law. Strict products liability is a creature of statute. OCGA § 51-1-11. Moreover, the manufacturer of a consumer product is held to a particular standard regarding the anticipation of misuse as "ordinary use." See, e.g., *Center Chemical Co. v. Parzini*, 234 Ga. 868, 869-870 (3) (218 SE2d 580) (1975). The duties of governments and public utilities maintaining structures adjacent to the public roads are evaluated under a different standard.

As a public policy matter, this distinction seems eminently reasonable. Given the many miles of roadway, finite resources, and fiscal responsibilities to the public involved, it is a rational public policy goal to set limits on the liability of governments and public utilities for structures beside the public roads. The law under *McDaniel* and *Collum* directly encourages governments and public utilities to give priority to the repair of structures that pose a hazard to drivers using the roadway in a lawful and ordinary manner. These hazards are those most likely to affect the largest number of drivers on a daily basis, and public policy rightly encourages the prompt and effective repair of those hazards by imposing liability.

The majority's reasoning also places this Court in the difficult position of holding that the county should anticipate a blowout or other mechanical failure combined with subsequent driver failure to keep control, while retaining the *McDaniel* rule that the county need *not* anticipate driver error standing alone. Because so many vehicular collisions are caused by driver error, such as incompetence, misjudgment, fatigue (as in *McDaniel*), or the influence of drugs or alcohol, we would in effect be holding that mechanical failure is "not unusual or extraordinary" under a *products liability* analysis and thus not unusual in this context, while continuing to insist that a far more common cause of vehicular collisions is "unusual or extraordinary." This position is, in my opinion, untenable.

Public policy also requires that a county not be held to new construction standards not in effect at the time a bridge was constructed, and *McDaniel* recognizes this distinction. 130 Ga. App. at 325 (4). The record reflects that the bridge at issue here is at least 35 years old, while the standards relied on by the majority were promulgated in 1988 and 1992, the latter after the collision at issue here. The majority in effect argues that governmental entities are required

to bring *all* public structures up to current standards as soon as a federal or state inspection has identified structures as currently non-conforming. The liability implications of such a holding would be far reaching, particularly at a time when decaying public infrastructure is a nationwide concern.

Moreover, the standards cited go entirely to construction and design, not maintenance, and issues of construction and design were explicitly removed from consideration here by this Court's earlier decision. *Adams v. Coweta County*, 208 Ga. App. 334, 335 (2) (430 SE2d 599) (1993). We cannot revisit issues already decided by this Court. OCGA § 9-11-60 (h).

For these reasons, I must respectfully dissent.

DECIDED JUNE 26, 1996 —

*Hawkins & Parnell, H. Lane Young II, Kimberly A. Houston Ridley*, for appellants.

*Love & Willingham, Allen S. Willingham, Novy, James & Vaughan, Eugene Novy, Deborah M. Vaughan*, for appellees.