Regan H. JONAS, et al., Plaintiffs,

v.

**ISUZU MOTORS LIMITED, et al., Defendants.**

**No. 5:00–CV–344–4 (WDO).**

United States District Court, M.D. Georgia, Macon Division.

July 11, 2002.

W. Carl Reynolds, Macon, GA, Charles A. Lanford, Jr., Macon, GA, Kice H. Stone, Macon, GA, for plaintiff.

Andrew T. Bayman, Robert B. Friedman, King & Spalding, Atlanta, GA, for defendants.

## ORDER

OWENS, District Judge.

Plaintiffs brought suit alleging strict liability, breach of warranty and negligence claims related to an accident involving a 1993 Isuzu Rodeo Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 and Georgia law is the applicable substantive law of the case. Before the Court is Defendants' Motion for Summary Judgment and Motion for Partial Summary Judgment on the punitive damages issue. Plaintiffs do not oppose summary judgment on the issue of punitive damages but do oppose summary judgment on all other claims. After carefully considering the entire record and the applicable law, the Court enters the following Order on the remaining claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following are the undisputed, material facts. On July 10, 1998 at approximately 3:15 p.m., Ollivant Jonas, Jr. was driving his family's 1993 Isuzu Rodeo on Highway 22 in Baldwin County, Georgia. At the time, Ollivant Jr. was 15 years old and was driving with a learner's permit. The other individuals in the Rodeo were Ollivant Jr.'s father, Ollivant Sr., Rita Jonas, Ollivant Jr.'s mother and Regan Jonas, Ollivant Jr.'s sister. The evidence shows Ollivant Jr. fell asleep at the wheel, drifted into oncoming traffic and lost control of the vehicle after it had already crossed over onto the shoulder on the opposite side of the road.[1] Once the vehicle was on the opposite shoulder, it rolled over 4¼ times.[2] Ollivant Jr. and Rita were

---

1. *See* Depo. of R. Jonas at 30; Depo. of B. Adams at 23; Depo. of E. Adams at 14.

2. *See* Depo. of E. Adams at 47, 49; Depo. of Lt. Deason at 20–24.

thrown from the vehicle. Tragically, Ollivant Sr., Rita and Ollivant Jr. died in this accident.

The Plaintiffs are Regan Jonas, individually and as next of kin of Ollivant Jr., and Charles Lanford, as administrator of the estate of Ollivant Jr.[3] The Defendants are various Isuzu entities. Plaintiffs contend the 1993 Isuzu Rodeo design was dangerously defective in that it had a high propensity to roll over and that this allegedly defective design caused the accident. Plaintiffs contend Defendants are liable based on theories of strict liability, negligence and breach of the warranty of merchantability. Defendants contend the evidence does not show the accident was proximately caused by any defect in the design of the Rodeo but was caused by the driver falling asleep at the wheel and losing control of the vehicle.

## II. Summary Judgment Standard

In *Celotex v. Catrett* the Supreme Court explained the evidentiary standards parties must meet in order to succeed on or withstand a summary judgment motion. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (negligence, breach of warranty and strict liability claims based on plaintiff's exposure to products containing asbestos). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and ... the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 322, 106 S.Ct. 2548. "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."

"Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* The burden on the movant may then be discharged "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 1; 99 F.R.D. 465, 467 (1984)). Finally, summary judgment is appropriate where the causal connection between a defendant's conduct and the plaintiff's injury is too remote for the law to permit a recovery. *See Tucker Federal Sav. & Loan Ass'n v. Balogh,* 228 Ga.App. 482, 491 S.E.2d 915 (1997).

## III. Substantive Claims

### A. Strict Liability
### ■ In Georgia

The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condi-

---

**3.** A related case involving the estates of Ollivant Jonas Sr. and Rita Jonas was filed in Baldwin County in Civil Action No. 00CV36059E.

tion when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51–1–11 (2001) (strict liability statute).[4] "Under Georgia law, a product is not in a defective condition when it is safe for normal handling. If injury results from abnormal handling, the manufacturer is not liable." *Argo v. Perfection Prods. Co.*, 730 F.Supp. 1109 (N.D.Ga.1989), *aff'd*, 935 F.2d 1295 (11th Cir.1991) (summary judgment to defendant where workers injured when propane gas heater exploded but safety valve was disabled and was not defective when manufactured) (citations omitted).

Manufacturers are liable only for foreseeable misuses of property. "Under Georgia law, 'foreseeability means that which it is objectively reasonable to expect, not merely what might occur.'" *Id.* at 1117 (citing *Greenway v. Peabody International Corp.*, 163 Ga.App. 698, 294 S.E.2d 541 (1982)). "No matter how negligent a party may be, if [their] act stands in no causal relation to the injury it is not actionable." *Finney v. Machiz*, 218 Ga.App. 771, 463 S.E.2d 60, 61 (1995) (vehicle's sudden collision with another vehicle was the proximate cause of the accident). "Strict liability is imposed for injuries which are the proximate result of product defects, not for the manufacture of defective products. Unless the manufacturer's defective product can be shown to be the proximate cause of the injuries, there can be no recovery." *Talley v. City Tank Corporation*, 158 Ga.App. 130, 279 S.E.2d 264, 269 (1981).

One of the principal cases applying these standards under Georgia law is *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (1994) (risk-utility analysis is the appropriate standard for products liability cases). In *Banks*, the parents of a nine-year-old child who had died after

eating rat poison brought a products liability action against the manufacturer of the poison. The Georgia Supreme Court held that "in design defect cases ... the court is called upon to supply the standard for defectiveness: the term 'defect' in design defect cases is an expression of the legal conclusion to be reached, rather than a test for reaching that conclusion." *Id.* at 673 (citations omitted). This determination must incorporate a "balancing test whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product." *Id.* The court noted that "although the benefits of safer products are certainly desirable, there is a point at which they are *outweighed* by the cost of attaining them." *Id.* at 674. "[I]t is only at their most extreme that design defect cases reflect the position that a product is simply so dangerous that it should not have been made available at all," therefore "the reasonableness of choosing from among various alternative product designs and adopting the safest one if it is feasible is considered the 'heart' of design defect cases." *Id.* "[L]iability for defective design attaches *only* when the plaintiff proves that the seller ... failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product." *Id.* at n. 4 (citation omitted). Finally, "under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury." *Id.* at 675. *See also Doyle v. Volkswagenwerk Aktiengelellschaft*, 114 F.3d 1134 (11th Cir.1997) ("compliance with federal standards or regulations will not bar manufacturer liability for design defect"); *Timmons v. Ford Motor Company*, 982 F.Supp. 1475 (S.D.Ga.1997) (sum-

---

4. Georgia law recognizes this statute also applies to used vehicles. *See Harison–Gulley*

*Chevrolet, Inc. v. Carr*, 134 Ga.App. 449, 214 S.E.2d 712 (1975).

mary judgment granted for sport utility manufacturer where design was not proximate cause of crash where driver was driving 100 miles per hour) (citing *Banks* ).

■ In the case at bar, the critical question is whether a design defect in the 1993 Isuzu Rodeo was the proximate cause of the roll-over accident. This question depends on whether the vehicle began to roll over while it was on the road—indicating a possible defect in the vehicle—or whether it began to roll over off the road—indicating driver error and negligence.[5]

Lt. Deason, the investigating officer, testified that the marks left by the Rodeo indicated the roll over began off the road because all of the marks were on the grass on the *shoulder* of the road. Lt. Deason drew a diagram of this on the police report. The police report is admissible under Federal Rule of Evidence 803(8) because it was prepared from the officer's own personal observation of the scene.[6]

One of the eyewitnesses, Mr. Ezell Adams, was asked specifically about where the roll-over began and testified that the vehicle began to roll over off the road. Mr. Adams was in the best position of anyone to testify about the circumstances of the accident because his was the oncoming vehicle the Rodeo passed on its way to the opposite side of the road. Mr. Adams was seated in the passenger side of his car and was able to turn around and see the entire incident. A common sense understanding of mathematics and physics demands the finding that the vehicle was well off the road before it began to roll over. Mr. Adams testified that his car was already off the road when the Rodeo passed him, that the Rodeo was traveling directly toward his car so that it forced him off the road and that the Rodeo began to roll over very soon after it passed his car. Assuming the Rodeo began to roll over just one second after it passed the Adamses' car, traveling 50 miles per hour or 75 feet per second, it would have been 75 feet off the road when it began to roll over.

The most compelling evidence in this case came from the lips of the driver himself, Ollivant Jonas, Jr. Three different eyewitnesses heard him say that he had fallen asleep at the wheel, had killed his father and wanted to die as well.[7] Although this evidence is profoundly tragic, it is admissible and negates the proximate cause element that is vital to Plaintiffs' claims.

■ An out-of-court statement used to prove the truth of the matter asserted would generally be excluded as hearsay. However, there are numerous exceptions applicable to this case. The most important one is Rule 804(b)(2)'s dying declaration exception. Rule 804(b)(2) provides for admission of Ollivant Jr.'s statement be-

---

5. Although Plaintiffs submitted the report of a purported expert, R. Wade Allen, to support their claims, those reports were not considered because they do not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Federal Rule of Evidence 702. Allen's testimony is not based on sufficient facts or data, the testimony is not the product of reliable principles and methods and he did not apply his principles and methods reliably to the facts of this case. Accordingly, his opinions are not admissible to support Plaintiff's claims.

6. The police report also falls under the hearsay exceptions of Rules 803(5)—recorded recollection—and 803(1)—present sense impression. This police report is unlike most in that the officer did not rely solely on the statements of witnesses but relied upon his own observations of evidence at the accident scene.

7. *See* Depo. of R. Jonas at 30; Depo. of B. Adams at 23; Depo. of E. Adams at 14.

cause it was made by the declarant while believing that his death was imminent and it concerned the cause or circumstances of what he believed to be impending death. Second, the statement was an "excited utterance" as described in Rule 803(2) because it related to the startling event of the accident and was made immediately after the declarant perceived the accident. Third, the statement is admissible under Rule 803(1)'s exception for present sense impressions because it described the circumstances of the accident in which the declarant had just been involved. Finally, the statement that Ollivant Jr. fell asleep at the wheel is corroborated by several other items of evidence: (1) Mr. Adams testified that, when the Rodeo began to drift over to his side of the road, the Rodeo drifted in a smooth, straight line;[8] (2) Lt. Deason testified there were no yaw marks on the road indicating any sudden emergency maneuvers *on* the road;[9] and (3) the diagram in the police report illustrates how the Rodeo tipped up off the road. Plaintiffs have produced absolutely no evidence to refute this evidence. Based on these factors, the Court must find that the roll-over began off the road.

■ The principles of proximate cause provide that the unforeseeable negligence of another person is an intervening cause that negates the liability of a manufacturer for an allegedly defective product. Georgia courts have not specifically ruled on the issue of the legal foreseeability of a driver falling asleep at the wheel in this context. However, there is some guidance that an individual falling asleep while driving should not be foreseeable to a vehicle manufacturer as a matter of law.

In *Southern Bell Telephone & Telegraph Co. v. Spears* a passenger in a vehicle that hit defendant telephone company's pole sued the company for placing the pole too close to the roadway. The court held the proximate cause of the accident was not the proximity of the pole to the roadway. Rather, the accident was caused by the intervening gross negligence of the driver because he had fallen asleep at the wheel. *Southern Bell Telephone & Telegraph Co. v. Spears*, 212 Ga. 537, 93 S.E.2d 659 (1956). In *McDaniel v. Southern Railway Co.* a widow sued the railway after her husband was killed in an accident when his car struck the guardrail on a bridge. *McDaniel v. Southern Railway Co.*, 130 Ga.App. 324, 203 S.E.2d 260 (1973). The court of appeals found the proximate cause of the accident was that, after the driver had fallen asleep, the car ran off the pavement and struck the guardrail. The guardrail then pierced through the car and killed the decedent. The court explained, "It is not a duty of the county to anticipate and provide against a driver of an automobile falling asleep, but this falls within the 'domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable,' there being no defect in the bridge which was a contributory cause toward rendering the automobile uncontrollable." *Id.* at 262 (citing *Georgia Power Co. v. Murray*, 57 Ga.App. 141, 194 S.E. 403, 406 (1937)). Likewise, in *Timmons, supra*, the court found that the proximate cause of a violent collision involving a Ford Explorer was not a design defect. Rather, the proximate cause of the accident was that the driver was drunk and driving in excess of 100 miles per hour. *Timmons*, 982 F.Supp. at 1481. The court held that society "cannot reasonably expect affordable passenger vehicles to be safe at collision speeds in excess of 100 miles per hour." *Id.* at 1480. *See also Coweta County v. Adams*, 221 Ga.App. 868, 473 S.E.2d 558 (1996) (a sleeping driver falls within the domain of the unusual and ex-

---

8. *See* Depo. of E. Adams at 10, 30, 39, 49, 60.

9. *See* Depo. of Lt. Deason at 20–28.

traordinary and is unforeseeable as a matter of law); *Theisen v. Milwaukee Automobile Mutual Ins. Co.,* 18 Wis.2d 91, 118 N.W.2d 140 (1962) (falling asleep at the wheel is negligence as a matter of law and no facts exist which will excuse such negligence).

The uncontroverted evidence shows that Ollivant Jonas Jr. fell asleep at the wheel, lost control of the vehicle and caused the vehicle to roll over 4¼ times. Tragically, three people lost their lives in this accident. There is simply no evidence to support Plaintiff's claims that the 1993 Rodeo was so defectively designed that it was unreasonably dangerous to consumers.[10] The law applicable to this case provides that a product is only defective if it fails to perform in a manner reasonably expected in light of its nature and intended function.[11] Isuzu has no duty to guard against grossly careless misuse of a vehicle by a reckless driver and has no duty to design an automobile incapable of causing injury.[12] Society cannot reasonably expect affordable passenger vehicles to be safe under extremely dangerous conditions such as falling asleep at the wheel. In this case, the law does not allow a finding that falling asleep at the wheel of the Isuzu Rodeo and the resulting consequences were foreseeable to the Defendants. Because there is no evidence that any other factor contributed to the accident, summary judgment is appropriate on the strict liability claim.

### B. Negligence

■ In *Banks, supra,* the Georgia Supreme Court noted there are substantial similarities between a strict liability claim involving an allegedly defectively designed product and a related negligence claim. *Banks,* 450 S.E.2d at 674 n. 3. The court did not elaborate on how it would legally distinguish such claims but merely held the two theories do not "merge in design defect cases." *Id.* In *Carmical v. Bell Helicopter Textron, Inc.* the Eleventh Circuit Court of Appeals held that to "prevail in a Georgia products liability action, whether based on negligence or strict liability, a plaintiff must show that the proximate cause of the injury was a defect which existed when the product was sold." *Carmical v. Bell Helicopter Textron, Inc.,* 117 F.3d 490, 494 (11th Cir.1997) (summary judgment for defendant where plaintiff failed to produce evidence that crash was proximately caused by a defect in the helicopter and failed to rebut defendants' argument that crash was proximately caused by plaintiff's negligence). Plaintiffs have failed to show that a design defect in the Rodeo was the proximate cause of the accident. Accordingly, Defendants are entitled to summary judgment on the negligence claim.

### C. Breach of Warranty of Merchantability

■ Pursuant to Georgia law, there is a proximate cause element to breach of the warranty of merchantability claims. *American Warehouse & Moving Service of Atlanta, Inc. v. Floyd's Diesel Service, Inc.,* 164 Ga.App. 106, 296 S.E.2d 64 (1982). Plaintiffs have failed to establish that any alleged defect in the Rodeo's design was the proximate cause of the acci-

---

**10.** Although alternative designs are typically an important factor in this type of case, it was not considered due to Plaintiff's failure to show that any defect in the Rodeo's design was the proximate cause of the accident. The court notes however that Plaintiff's purported expert was questioned about alternative designs and was unable to provide evidence that an alternative design was practicable, feasible and available to Isuzu. *See* Depo. of W. Allen at 96, 104–106, 147, 209, 238.

**11.** Am.L.Prod.Liab.3d § 10:40.

**12.** *Id.*

dent in question. Accordingly, Defendants are entitled to summary judgment on the breach of warranty claim.

## IV. CONCLUSION

Plaintiffs have failed to establish a prima facie case of proximate cause that a defect in the Rodeo's design caused the accident. Plaintiffs have failed to rebut the Defendants' argument that the crash was proximately caused by the vehicle being driven off the roadway after Ollivant Jonas, Jr. fell asleep. The scintilla of evidence pre-sented by Plaintiffs would not allow reasonable jurors to find that the 1993 Isuzu Rodeo's design was defective in light of the conditions and resulting forces of this particular accident. Accordingly, Defendants are entitled to judgment as a matter of law. Defendants' **Motion for Summary Judgment is GRANTED on ALL CLAIMS.**[13]

---

**13.** Although Plaintiffs did not specifically allege a failure to warn claim in the enumerated counts in the Complaint, there is language throughout the Complaint as well as the later memoranda indicating Plaintiffs are alleging a failure to warn of the Rodeo's allegedly defective design. First, there is no legal or factual basis for a failure to warn claim because (1) there is no evidence that any defect in the Rodeo's design was the proximate cause of the accident and (2) the owner's manual for the Rodeo specifically warned against abrupt maneuvers that could lead to loss of control and cause roll-overs. Second, the manual specifically warned against using tires that were not the recommended size because doing so would make it easier for the driver to lose control, roll over and for passengers to suffer serious injury. *See Carmical v. Bell Helicopter*, 117 F.3d at 494–95; Owner's Manual, Ex. J. to Def.'s Mem. in Supp. of Mot. for Summ.J.