Charlotte BINAKONSKY,
et al., Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

Civil No. H–95–2529.

United States District Court,
District of Maryland.

July 2, 1996.

Martin H. Freeman and Freeman & Jenner, Bethesda, Maryland, for plaintiffs.

Jeffrey G. Cook and McGuire, Woods, Battle & Boothe, Baltimore, Maryland, for defendant.

ALEXANDER HARVEY, II, Senior District Judge.

In the late afternoon of August 30, 1992, David A. Binakonsky ("David Binakonsky" or "the decedent") drove his Ford van at high speed into a tree while intoxicated and was killed. This civil action has been instituted in this Court by the decedent's widow, Charlotte Binakonsky, individually and as mother and next friend of the decedent's minor children and also as the personal representative of her husband's estate. Named as defendant is Ford Motor Company ("Ford"), the manufacturer of the van.

Plaintiffs contend that the decedent's death was caused by the defective design of the van's fuel system which resulted in a fire inside the van's passenger compartment after the vehicle's initial impact with the tree. According to plaintiffs, Ford's allegedly defective fuel system caused an otherwise survivable accident to be fatal. Substantial compensatory and punitive damages are here sought by the plaintiffs. Diversity jurisdiction exists under 28 U.S.C. § 1332.

Pursuant to Scheduling Orders entered by the Court, the parties have engaged in extensive discovery. Pending before the Court is a motion for summary judgment filed by defendant Ford.[1] Memoranda have been filed by the parties in support of and in opposition to defendant's pending motion for summary judgment. In their submissions, the parties have relied upon affidavits, exhibits and excerpts from depositions taken during discovery. A hearing on the pending motion has been held in open Court. For the reasons to be stated herein, the motion of defendant Ford for summary judgment will be granted as to all counts of the complaint.[2]

I

*Background Facts*[3]

David Binakonsky purchased a 1988 Ford E–150 van in February of 1988 at a price of approximately $11,000. This vehicle was a standard, cargo-type van with a large open interior. Various customized equipment

---

**1.** Various other motions are presently pending. In view of the Court's ruling herein on defendant's motion for summary judgment, it is not necessary to address these other pending motions, which are now moot.

**2.** On May 13, 1996, the Court approved plaintiffs' amendment by interlineation of two paragraphs of their complaint. The complaint, as amended, will be referred to herein as "the complaint."

**3.** Because plaintiff is the non-movant here, the facts summarized below, where disputed, reflect plaintiffs' version of the events to the extent it is support by affidavits, depositions or other documentary evidence. *Magnuson v. Peak Technical Servs., Inc.*, 808 F.Supp. 500, 504 (E.D.Va.1992).

costing some $11,000 was added to the van by David Binakonsky at the time of its purchase, including a carpet, a bay window, a cabinet, a sofa, a refrigerator, a bed and a built-in television set and VCR. In order to maximize the interior space of the van, the vehicle had been designed and manufactured with the driver's seat advanced forward, and with a short front engine space. Because there was little room under the hood, the van's engine extended back into the passenger compartment between the driver's seat and the passenger's seat. The engine was covered by a removable plastic and fiberglass shell called a "doghouse." There was access to the engine from both the front hood and the passenger compartment.

A chronic abuser of alcohol, David Binakonsky was an incorrigible drunken driver. At the time of his death, he had a lengthy record of citations and arrests for driving under the influence ("DUI") and for driving while intoxicated ("DWI").[4] There were DUI and DWI convictions in Florida, Pennsylvania, New Jersey and Maryland. He had served various short periods of incarceration in Pennsylvania and in Maryland. On August 5, 1992, the decedent had been arrested and charged with possession of crack cocaine and drug paraphernalia, with DUI and DWI and with driving with a revoked license. He had been confined on those charges for twenty days when he was released on bond on August 25, 1992.

Five days later, on August 30, 1992, the decedent, while alone, was driving his van southbound on Gambrill Park Road in Frederick County, Maryland. At the time, he was intoxicated and was operating his vehicle on a revoked license. While traveling at a speed in excess of forty miles per hour, his van left the highway and struck a large tree head-on. The speed limit at this location is thirty miles per hour. The force of the impact drove the van's engine rearward into the passenger compartment. The gasoline in

the engine immediately ignited and was spewed at high pressure into the passenger compartment. The decedent, who was unconscious at the time, was horribly burned as the fire consumed all of the gasoline from the van's gas tanks. When rescue workers arrived at the van shortly thereafter, David Binakonsky was dead.

According to the post-mortem examination report, the decedent had suffered a fracture of the skull. The cause of death was attributed to thermal injury with fourth degree burns to 100% of his body surface area. Noting that his blood alcohol level was between 0.14% and 0.16%, and that his urine alcohol level was 0.23%, the Assistant Medical Examiner concluded that the deceased had been consuming alcoholic beverages prior to his death.[5]

David Binakonsky was survived by his wife Charlotte Binakonsky and by four young daughters. In the complaint which plaintiffs have filed in this case, they seek to recover substantial compensatory and punitive damages from defendant Ford under theories of negligence and strict liability.

## II

### *Summary Judgment Principles*

It is well established that a party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the plaintiffs will bear the ultimate burden of persuasion at trial, "the burden on the moving party (at the summary judgment stage) may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317,

4. In addition, there were numerous other convictions on the decedent's record for traffic violations, including speeding and driving with a suspended or revoked license.

5. Under current Maryland law, an alcohol concentration of 0.10% or more, as determined by an analysis of the person's blood, constitutes

intoxication *per se.* 1996 Md.Laws Ch. 652. At the time of the occurrence at issue here, a blood alcohol concentration of 0.10% or more was deemed to be *prima facie* evidence that the person tested was driving while intoxicated. *Md. Cts. & Jud.Proc.Code Ann.* § 10–307(e).

325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant in the case may be liable under the claims alleged. *See* Rule 56(e). If the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 322, 323, 106 S.Ct. at 2552.

■ While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of a minimal showing by a plaintiff that the defendant may be liable under the claims alleged, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *Id.* at 256–57, 106 S.Ct. at 2514–15; *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

### III

### *The Claims*

The complaint contains twelve counts. Six counts are based on a theory of negligence and six counts are based on a theory of strict liability. Counts I and VII of the complaint are survival actions brought by Charlotte Binakonsky in her capacity as personal representative of her husband's estate.[6] Count I asserts a claim of negligence while Count VII asserts a claim of strict liability.

■ Plaintiffs have conceded that defendant is entitled to summary judgment as to Counts I and VII. David Binakonsky suffered a fractured skull as a result of the crash and was immediately rendered unconscious. Since there is no evidence in the record that the decedent experienced any conscious pain and suffering before his death, or that plaintiff Charlotte Binakonsky incurred funeral expenses, she is not entitled to a recovery from defendant Ford in her capacity as personal representative of her husband's estate. Summary judgment will therefore be entered in favor of defendant Ford as to Counts I and VII.

In Counts II, III, IV, V and VI, Charlotte Binakonsky and each of her four children have asserted wrongful death claims against

---

**6.** Charlotte Binakonsky was not the personal representative of her husband's estate on the date when this action was filed because no estate had been opened on behalf of the decedent at that time. However, by its Memorandum and Order of May 2, 1996, the Court permitted plaintiffs to amend the complaint by interlineation to indicate that Charlotte Binakonsky had been appointed personal representative of her husband's estate on April 19, 1996.

defendant Ford based on the contention that defendant's negligence in designing the van's fuel system and its doors caused the death of David Binakonsky. Counts VIII, IX, X, XI and XII are also wrongful death claims asserted by Charlotte Binakonsky and each of her four children. These five counts are based on the contention that defendant Ford is strictly liable for the allegedly defective design of the van's fuel system and doors.

■ Plaintiffs have now also conceded that defendant Ford is entitled to summary judgment as to plaintiffs' wrongful death claims based on a theory of negligence. Contributory negligence has been recognized in Maryland as a defense to a negligence claim asserted in a products liability suit. *See, e.g., Moran v. Faberge, Inc.,* 273 Md. 538, 554, 332 A.2d 11 (1975). There can be little doubt that David Binakonsky was as a matter of law contributorily negligent when he drove his Ford van off the highway at excessive speed into a tree while highly intoxicated. The Court concludes on the record here that plaintiffs cannot as a matter of law prevail on their negligence claims. Summary judgment will therefore also be entered in favor of defendant Ford as to Counts II, III, IV, V and VI.

As a result of plaintiffs' concessions, there remain for the Court's consideration only plaintiffs' wrongful death claims based on the theory of strict liability. According to plaintiffs, the fuel injection lines, connectors and fuel shut-off switch were designed within the van by Ford in a defective fashion such that their integrity could not and did not survive the frontal collision. Plaintiffs allege that the engine and its fuel injection lines, connectors and shut-off switch were located in such a manner that, as a result of the collision, gasoline was immediately ignited and spewed into the passenger compartment causing David Binakonsky to be incinerated. According to plaintiffs, the configuration of the engine and passenger compartment and the location of the engine and the fuel system were defectively designed by Ford. It is further alleged that the van was defectively designed because the front doors jammed as a result of the collision, trapping the decedent inside the burning vehicle.

In seeking summary judgment as to plaintiffs' strict liability claims, defendant Ford advances the following arguments:

(1) that Maryland does not recognize a strict liability claim in a crashworthiness case based upon the theory of a design defect;

(2) that since plaintiffs' causes of action in Counts VIII, IX, X, XI and XII are essentially negligence claims, they are barred by the doctrines of contributory negligence and assumption of risk;

(3) that even if plaintiffs' wrongful death causes of action are treated as strict liability claims, they are barred by the doctrines of contributory negligence and assumption of risk;

(4) that the Ford van at issue here was reasonably designed as a matter of law; and

(5) that plaintiffs are not entitled under the circumstances here to recover punitive damages in this case.

What the Court must here determine is whether on the record before it plaintiffs may proceed to trial on the strict liability claims asserted by them against defendant Ford.

## IV

### *Discussion*

■ All of plaintiffs' causes of action are based upon the so-called "crashworthy doctrine." Crashworthiness, also known as the "second collision" doctrine, is a branch of products liability whereby the manufacturer of a defective product can be held liable for injury or death resulting from a vehicle crash even though the defective product did not cause the initial harm to the victim. If the defective product increases or enhances the victim's injuries, an automobile manufacturer may be held liable for the enhanced injuries or death suffered by the victim beyond what was caused by the initial accident.

In this diversity case, Maryland law is controlling. The Court of Appeals of Maryland first recognized the crashworthiness doctrine in *Volkswagen of America, Inc. v. Young,* 272 Md. 201, 321 A.2d 737 (1974). A

wrongful death action had been filed in the United States District Court for the District of Columbia on behalf of a decedent who had been killed in an automobile accident occurring in Maryland. A question had been certified by the federal court to the Court of Appeals of Maryland which was asked to determine whether Maryland recognized a cause of action for crashworthiness based on "breach of warranty or negligence or absolute liability or misrepresentation." *Id.* at 203–04, 321 A.2d 737.

At the time of the *Young* decision, Maryland had not as yet recognized the existence of a claim for strict liability in a defective products case. In *Young*, the Court followed the reasoning of *Larsen v. General Motors Corporation*, 391 F.2d 495 (8th Cir.1968) and held that an automobile manufacturer could be held liable under a negligence theory for a defect in design which the manufacturer could have reasonably foreseen would cause or enhance injuries on impact and which in fact leads to or enhances the injuries in an automobile collision. *Id.* at 216, 321 A.2d 737; *see also Frericks v. General Motors Corp.*, 274 Md. 288, 294, 336 A.2d 118 (1975). In reaching this conclusion, the Court relied on and adopted the reasoning of the decision of the United States Court of Appeals for the Fourth Circuit in *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066 (4th Cir.1974), a case which had been decided merely six months prior to *Young*.

■■■ Subsequently, in *Phipps v. General Motors Corporation*, 278 Md. 337, 363 A.2d 955 (1976), the Court of Appeals adopted the theory of strict liability in tort as expressed in § 402A of *Restatement (Second) of Torts.* Phipps was not, however, a crashworthy case. Moreover, *Phipps* involved a product found to present an inherently unreasonable risk, namely an allegedly latent defect in a car's accelerator. *Id.* at 345–46, 363 A.2d 955. *Young* and other Maryland cases indicate that similar but somewhat different principles apply when a strict liability claim based on a defective design has been asserted in an automobile "crashworthiness" case rather than in an "inherently unreasonable" case. In any event, whether a plaintiff's strict liability claim is based, as here, on an

alleged defective design, or, as in *Phipps*, on an alleged inherently unreasonable design, a plaintiff proceeding under § 402A must show that the defendant has sold its product in a defective condition "unreasonably dangerous" to the user. *Id.* at 341, 363 A.2d 955.

(a)

### Contributory Negligence

Relying on *Young* and *Dreisonstok*, defendant Ford first argues that under Maryland law all defective design cases must be treated as if they were brought under a negligence theory rather than under a strict liability theory. According to defendant, the defense of contributory negligence is therefore available in a case such as this one even though plaintiffs' claims have been denominated as ones brought under a theory of strict liability.

■■■ Although the issue is not entirely free of doubt, this Court has concluded from its review of the applicable authorities that a strict liability claim seeking a recovery for the defective design of a motor vehicle product may be asserted in Maryland in a "crashworthiness" case. In *Young*, the Court did state that, regardless of whether the theory of § 402A should be accepted in other contexts, "we are convinced that it has no proper application to liability for *design* defects in motor vehicles." (Emphasis in original). *Young*, 272 Md. at 220–21, 321 A.2d 737. This statement would appear to be dictum since it was made before the Court of Appeals in *Phipps* adopted the theory of § 402A liability. Moreover, it does not appear that this dictum has been followed in later Maryland cases. Defendant has not cited any Maryland appellate decision handed down after *Phipps* which has held that a strict liability claim based on a defective design of a motor vehicle is not a viable cause of action under Maryland law.

■■■ In *Valk Manufacturing Co. v. Rangaswamy*, 74 Md.App. 304, 537 A.2d 622 (1988), *aff'd in part, rev'd in part, sub nom. Montgomery County v. Valk Mfg. Co.*, 317 Md. 185, 562 A.2d 1246 (1989), the plaintiffs asserted a wrongful death claim based upon a theory of strict liability because of the

defective design of a snow plow hitch. In affirming a verdict in favor of plaintiffs, the Court of Special Appeals of Maryland did not question the viability of the strict liability claim and specifically rejected defendant's contention that contributory negligence barred any recovery by the plaintiffs. *Id.* at 324–25, 537 A.2d 622. *See also Singleton v. Manitowoc Co., Inc.,* 727 F.Supp. 217, 227 (D.Md.1989), *aff'd,* 931 F.2d 887 (4th Cir. 1991) (table); *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 435 n. 7, 601 A.2d 633 (1992); *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 597–98, 495 A.2d 348 (1985); *Mazda Motor of Am., Inc. v. Rogowski,* 105 Md.App. 318, 326, 659 A.2d 391 (1995); *Jensen v. American Motors Corp., Inc.,* 50 Md. App. 226, 231, 437 A.2d 242 (1981). Applying here the principles of those cases, this Court concludes that a strict liability cause of action is available under Maryland law in a product liability case based on the alleged design defect of a motor vehicle. The Court further concludes that the defense of contributory negligence is not available under Maryland law in a products liability suit based on a theory of strict liability.

### (b)

### *Reasonableness of the Design*

■ Although the defense of contributory negligence is not available to a defendant in a case involving a strict liability claim based on the alleged defective design of a motor vehicle, a court's inquiry into the question of the reasonableness of the challenged design involves the application of essentially the same principles whether the cause of action is based on a theory of negligence or on a theory of strict liability.[7] Relying on *Dreisonstok,* 489 F.2d at 1068 n. 2, the Court of Appeals in *Frericks v. General Motors Corp.,* 274 Md. 288, 300, 336 A.2d 118 (1975) concluded that, with regard to the application of liability for "secondary impact" injuries in design defect cases, it makes little or no real difference whether liability is asserted on grounds of negligence or on grounds of strict liability. Under Maryland law, the inquiry in either case is essentially the same. Thus, even though *Young* and *Dreisonstok* were negligence cases, the courts' analyses of the controlling factors for determining the reasonableness of the challenged design are fully applicable in this strict liability case. As those two decisions indicate, the conduct of David Binakonsky, although not conclusive, is an important factor to be considered by this Court in determining whether this case may proceed to trial under plaintiffs' strict liability claims.

■ What must be determined here is whether defendant Ford could reasonably have foreseen that its challenged design would subject the user to unreasonable risk of injury in a collision of this sort. Although strict liability increases the exposure of sellers to liability, it does not make them insurers of users. *Singleton,* 727 F.Supp. at 221. The mere fact that automobile collisions are frequent enough to be foreseeable is not sufficient in and of itself to create a duty on the part of a manufacturer to design its vehicle "to withstand such collisions *under any circumstances.*" (Emphasis in original). *Dreisonstok,* 489 F.2d at 1070. As the Court said in *Young,* "no one has suggested that an automobile must be designed to withstand a high speed head-on collision with a truck...." 272 Md. at 217, 321 A.2d 737.

■ In determining the question of "reasonableness", there must be a balancing of the likelihood of harm and the gravity of harm if it happens against the burden of the precautions which would be effective to avoid the harm. *Id.* at 219, 321 A.2d 737 (*quoting Larsen,* 391 F.2d at 502 n. 3). Factors to be considered include the style and type of vehicle, the particular purpose of the vehicle and its price. *Id.* Furthermore, the "nature of the accident is to be taken into account, ..." *Id.* This latter factor was also emphasized in *Dreisonstok* where the Court stated: "Moreover, in a 'crashworthy' case, it is necessary to consider the circumstances of the accident itself." 489 F.2d at 1073. What this Court is

---

**7.** Indeed, in *Singleton v. International Harvester Co.,* 685 F.2d 112, 115 (4th Cir.1981), the Fourth Circuit reviewed *Phipps* and *Young* and concluded that "in Maryland design cases not included in the limited category of inherently unreasonable risks, strict liability, in the usual sense, does not apply."

called upon to decide here in ruling on defendant's motion for summary judgment is whether a reasonable jury could under the facts of record impose liability on defendant Ford on the ground that the design of its E–150 van was unreasonably dangerous in light of all of the relevant circumstances.

After due consideration of the parties' arguments, this Court concludes that the outcome of this case is controlled by the Fourth Circuit's opinion in *Dreisonstok.* Indeed, the facts are remarkably similar. In *Dreisonstok*, a Volkswagen "microbus" collided with a telephone pole while traveling in excess of forty miles an hour. Located in the passenger seat of the vehicle, plaintiff suffered injuries to her leg. In suing the vehicle manufacturer for so-called "enhanced" injuries, the plaintiff alleged that the vehicle had been negligently designed because defendant had failed to use due care by providing sufficient energy absorbing materials, devices or "crush space." The District Court entered judgment in favor of the plaintiff, and the manufacturer appealed. The Fourth Circuit reversed in an opinion authored by Circuit Judge Russell. 489 F.2d at 1069. After reviewing all of the factors which should properly be applied in determining the reasonableness of a challenged design in a crashworthiness case, the Fourth Circuit concluded as a matter of law that there had, under the facts of that case, been no violation by the defendant of its duty of ordinary care in the design of its vehicle. The result in *Dreisonstok* compels the conclusion that defendant Ford cannot as a matter of law on the record in this case be held liable for the death of David Binakonsky.

Here, as in *Dreisonstok*, the vehicle at the time of the crash was traveling at a speed in excess of forty miles an hour. Plaintiffs' own expert in this case estimated that the van hit the tree at forty to forty-four miles per hour.[8] Here, as in *Dreisonstok*, a fixed stationary object was struck, a tree in this case and a telephone pole in *Dreisonstok.* As in *Dreisonstok*, the vehicle involved here was of a special type and particular design. The Court noted in its Opinion that the design had been uniquely developed in order to provide the owner with a maximum amount of either cargo or passenger space in an inexpensively priced vehicle. *Id.* at 1073–74. Similarly, in this case, the vehicle was a relatively inexpensive one and had been designed to afford the maximum amount of passenger space. To provide more interior space, the driver's seat of the van was located much closer to the front of the vehicle than in a standard car, and the engine and fuel system were placed in close proximity to the driver.

Price must also be "a pertinent factor" and "should be considered," *Young,* 272 Md. at 219, 321 A.2d 737, inasmuch as "a Cadillac may be expected to include more in the way of both conveniences and 'crashworthiness' than the economy car." *Dreisonstok,* 489 F.2d at 1073. The name "Econoline" assigned to this van indicates that it was intended to be an economy car. The price paid by the decedent for this "Econoline" van was merely $11,000 for the vehicle itself, while another $11,000 represented the cost of the customized equipment added to the interior of the van.

As in *Dreisonstok*, there was no evidence in the record here that there was any practical way of improving the "crashability" of the vehicle which would have been consistent with the peculiar purposes of its design. *Id.* at 1074. Plaintiff's expert did not in this case give consideration in his deposition testimony to the distinctive purpose of this particular vehicle but opined that all full-size vans were inherently dangerous because the engine extended into the passenger compartment. As the Fourth Circuit observed in *Dreisonstok*:

> It is entirely impermissible to predicate a conclusion of negligent design simply because a vehicle, having a distinctive purpose, such as the microbus, does not conform to the design of another type of vehicle, such as a standard passenger car, having a different nature and utility.

*Id.* at 1075.

\* \* \* \* \* \*

8. Defendant's expert estimated that the vehicle hit the tree at forty-seven to fifty miles per hour.

[I]n determining whether a vehicle has been negligently designed so far as safety is concerned, the special purpose and character of the particular type of vehicle must be considered, and a microbus is no more to be compared with a standard 1966 passenger type car than the convertible instanced in *Dyson* [298 F.Supp. 1064] is to be compared with a hard-top passenger car.

*Id.* at 1076.

Similarly, the design of a van is not necessarily negligent because it does not conform to the design of an ordinary car. In view of the special purpose and character of this E–150 van, *Dreisonstok* teaches that this Court should not, in determining whether the vehicle has been negligently designed for safety purposes, compare it with a standard 1988 passenger car.

As noted hereinabove, both *Young* and *Dreisonstok* require consideration of the circumstances of the accident itself. In this case, consideration of these circumstances is a much more compelling factor in favor of the defendant than in *Dreisonstok*. Defendant Ford had no duty to design the fuel system of an E–150 van in such a way that it would withstand a high speed, head-on crash into a large tree brought about by an inebriated driver. Nor did such a duty exist insofar as the front doors of the van were concerned. The magnitude of the impact is revealed by one of the photographs which forms a part of the record in this case.[9] This photograph shows the tree deeply imbedded into the hood and engine space of the van with the vehicle's bumper bent back in the form of a sharp "V". Indeed, the front part of the van is literally wrapped around the tree. The force of the impact drove the van's engine rearward into the passenger compartment, causing displacement of and rupture of the fuel injector lines. The fuel cut-off switch in this particular vehicle could hardly have been expected to operate properly in a collision of this magnitude. Nor could defendant Ford have been expected to design doors which would not be jammed in a crash

of this sort. This was not precisely "a high speed head-on collision with a *truck*," but it was certainly the functional equivalent of that type of impact which both *Young* and *Dreisonstok* recognized as imposing no liability on the manufacturer of the vehicle. *See Young*, 272 Md. at 217, 321 A.2d 737 and *Dreisonstok*, 489 F.2d at 1073.

█ Finally, as Judge Russell noted in *Dreisonstok*, foreseeability is not to be equated with duty. 489 F.2d at 1070. Whether a duty on the part of an automobile manufacturer exists in a crashworthy case is a question of fairness and involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution. *Id.* at 1070 n. 9 (*citing Goldberg v. Housing Authority*, 38 N.J. 578, 186 A.2d 291, 293 (1962)).

When all the considerations outlined in *Dreisonstok* are applied to the circumstances here, this Court cannot conclude that defendant Ford can be held legally responsible for the death of David Binakonsky. On the record in this case, the Court is satisfied that a reasonable juror would not be able to determine that the design of this Ford E–150 van was unreasonably dangerous in light of all of the relevant considerations.

Plaintiffs' reliance on *Frericks* is misplaced. The vehicle involved in that case was a standard two-door sedan which left the road and overturned. The lower court had sustained a demurrer to the plaintiffs' declaration which had asserted a negligence claim based on an alleged design defect. In reversing and remanding, the Court of Appeals stated that it was unable to conclude "from the bare facts contained in petitioners' declaration, that the accident in this case was of such an unusual nature and severity that, as a matter of law, respondents had no duty to design the car to prevent injuries occurring as a result of a 'secondary impact' in the accident." 274 Md. at 303, 336 A.2d 118. Here, the pertinent facts have been developed by discovery, and the unusual nature

---

**9.** Defendant's biomechanical expert testified that when the van struck the tree at a speed in excess of 40 miles per hour, the forces undergone by the

decedent's body would be the same as if he had jumped out of a seven-story window.

and severity of the crash have been fully revealed.

■ In opposing defendant's contention that its design of the E–150 van was reasonable, plaintiffs also argue that there are disputed issues of material fact concerning whether defendant's design of the van's fuel injection line connectors and shut-off switch were defective and whether the design of the front doors was also defective. According to plaintiffs, these disputes must be resolved by the jury at the trial of this case. However, as indicated by *Dreisonstok,* the question of the reasonableness of a design in a case of this sort may properly be determined as a matter of law. In *Dreisonstok,* the District Court's finding that the defendant manufacturer had failed to use due care in the design of its vehicle was reversed as a matter of law. 489 F.2d at 1069. The Fourth Circuit held that where the record includes compelling circumstances establishing that the design was not unreasonable, it is appropriate for the issue to be decided as a matter of law.

Similarly in this case, compelling circumstances establish as a matter of law that the design of this van was not unreasonably dangerous. Summary judgment will therefore also be entered in favor of defendant Ford as to Counts VIII, IX, X, XI and XII.[10]

## V

### Conclusion

For all the reasons stated, this Court concludes that defendant Ford is entitled to the entry of summary judgment in its favor as to all counts of the complaint. Accordingly, defendant's motion for summary judgment will be granted. An appropriate Order will be entered by the Court.

**10.** In view of the Court's determination of the other issues in this case, it is not necessary to address defendant's arguments that plaintiffs' wrongful death claims are barred by the doctrine of assumption of risk and that plaintiffs are not entitled on the facts to recover punitive damages.