Johnnie Lee **TIMMONS, Sr., Individually and as Administrator of the Estate of Cynthia P. Timmons; Joseph Partridge, Individually; Jacquelyn Ryals, Individually; Clifford Partridge, Sr., Individually and as Administrator of the Estates of Lenora Bailey and Burnice Edward Bailey; Michael Hicks, Individually; and Latrice Hicks, Individually and as Administratrix of the Estate of Desiree D. Hicks, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

No. CIV.A. CV 397–43.

United States District Court,
S.D. Georgia,
Dublin Division.

Sept. 29, 1997.

Charles Kyle Reed, Long, Weinberg, Ansley & Wheeler, Atlanta, GA, Earl W. Gunn, Atlanta, GA, Joseph K. Reid, III, McGuire, Woods, Battle & Boothe, Richmond, VA, Grace R. den Hartog, William H. King, Jr., Richmond, VA, for Defendant.

David Roberson, Roberson & Schmidt, John Thomas Woodall, Woodall & Mackenzie, Savannah, GA, Betty Walker–Lanier, Tifton, GA, for Plaintiffs.

## ORDER

BOWEN, Chief Judge.

Before the Court is Defendant's Motion for Summary Judgment against all Plaintiffs on all issues of liability. This products liability case is brought pursuant to O.C.G.A. § 51–1–11 seeking monetary damages caused by injuries and deaths resulting from a motor vehicle collision occurring in Dodge County, Georgia. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED.**

### I.   FACTUAL BACKGROUND [1]

At approximately 2:00 a.m. on June 22, 1996, Dwayne Franklin Carr was traveling

---

1. In considering Defendant's Motion for Summary Judgment, all evidence in the Record has been accepted as true and in a light most favorable to Plaintiffs. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc).

southbound on Georgia State Road 27 driving a 1991 Nissan "King Cab" pickup truck, while heavily intoxicated. Carr's vehicle crossed the center line of the road directly into the path of a northbound 1994 Ford Explorer causing a violent, destructive, and fatal collision. The occupants of the Explorer were Plaintiffs' decedents; Cynthia Timmons, Lenora Bailey, Edward Bailey, and Desiree Hicks. Carr's vehicle was traveling at least seventy miles per hour when it struck the Ford Explorer. According to Plaintiffs' engineering expert, Dr. Craig Depken, the resulting closing speed of the Nissan truck and the Ford Explorer was approximately 102 miles per hour at impact. While Plaintiffs' facts are accepted as true for the purposes of this Motion, it should be noted that Defendant's experts estimate that the closing speed of the two vehicles was in excess of 130 miles per hour.

As a result of the high-speed collision, the Ford Explorer's engine was pushed rearward and could actually be seen from inside the passenger compartment. The Explorer's fuel pump shut off properly at the point of impact and none of the fuel lines showed any sign of fracture. However, at some point after the Explorer came to rest, a fire from an undetermined source, possibly the fuel rail, started in the vehicle.

Tragically, four of the five occupants of the Ford Explorer—Cynthia Timmons, Lenora Bailey, Edward Bailey and Desiree Hicks—died as a result of the collision. Plaintiffs' medical expert, Dr. Brian Frist, M.D., opines that 1) Edward Bailey suffered blunt-force trauma to his head, chest, and pelvis and died as a result of significant internal injuries; 2) Lenora Bailey suffered blunt-force trauma to her chest and it was inconclusive whether she died of her injuries or the ensuing fire; 3) Cynthia Timmons suffered blunt-force trauma to her head and chest and died as a result of her injuries; and 4) Desiree Hicks showed no signs of internal injuries and died of smoke and heat inhalation.

The exact cause of baby Desiree's death is the subject of much contention in this case. However, it is uncontested that baby Desiree was found in what remained of the front floorboard area of the Explorer. As indicated by the toxicology report, her carboxyhemoglobin (blood carbon monoxide) level was zero. Additionally, the autopsy report indicates that soot was noted on the epiglottis, in the trachea down into the bifurcation, and into the pulmonary airways.

The medical examiner in his initial autopsy report specified the cause of death as "smoke inhalation." After toxicology reports indicated that the carboxyhemoglobin level was zero, the medical examiner amended his report showing that baby Desiree's cause of death was "external causes associated with smoke inhalation." [2] The exact cause of death, however, was found inconclusive. Nevertheless, for the purposes of this Motion, I view the facts as to baby Desiree in a light most favorable to the Plaintiffs noting that the medical examiner amended his report.

## II. REQUIREMENTS FOR SUMMARY JUDGMENT

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Applicable substantive law determines which facts are material, that is, which facts have the potential to affect the outcome of the trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, the nature of the movant's initial bur-

2. Plaintiffs have proffered testimony "that the fact that a body in a fire does not have carboxyhemoglobin in the blood does not mean that they must have been dead before the fire began" and even "persons who die in a car which is engulfed in flames often show low or even absent carboxyhemoglobin levels." (Frist Aff. ¶ 9).

den "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry its initial burden either by negating an essential element of the non-movant's case or by demonstrating that there is an absence of evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Merely stating that the non-movant cannot meet its burden at trial is insufficient. *Id.*

If—and only if—the movant carries the initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608.[3] Again, this burden varies depending upon whether the movant or non-movant bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence sufficient to withstand a motion for directed verdict at trial. *Fitzpatrick*, 2 F.3d at 1116 (citation omitted). If the non-movant bears the burden of proof at trial, the non-movant's response must be tailored to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant demonstrated an absence of evidence on a material fact, the non-movant must either show that the record con-

tains evidence that was "overlooked or ignored" by the movant, or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* (citation omitted).

The clerk has given the non-moving party notice of the summary judgment motion, of the right to file affidavits or other materials in opposition, and of the consequences of default. Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. SUMMARY JUDGMENT IN THIS CASE

Plaintiffs allege that the deaths of Cynthia Timmons, Lenora Bailey, Edward Bailey, and Desiree Hicks were the result of defects in the fuel and seat systems of the Ford Explorer. Specifically, Plaintiffs claim that Defendant is liable pursuant to O.C.G.A. § 51–1–11 under principles of strict liability in tort, negligent design, design defect, and failure to warn.

### A. CRASHWORTHINESS

■ Under Georgia law, the appropriate analysis for manufacturer defect liability is the "Risk–Utility" standard as adopted by the Georgia Supreme Court. *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 735, 450 S.E.2d 671 (1994) (adopting this standard for both strict liability and negligence). In *Banks,* the parents of a nine-year-old boy who died after ingesting a poisonous rodenticide brought suit alleging defective design and inadequate labeling of ICI's product under theories of strict liability and negligence. *Id.* 450 S.E.2d at 672. The Georgia Supreme Court conducted "an exhaustive review of foreign jurisdictions and learned treatises" and concluded the "Risk–Utility" analysis was appropriate in design defect cases. *Id.* at 673.

---

**3.** The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

At its core, the "Risk–Utility" analysis incorporates the concept of "reasonableness." The Georgia Supreme Court found that numerous factors must be considered in balancing the risk-utility of a given product to determine the reasonableness of the design. According to the Georgia Supreme Court, the "heart" of a design defect analysis is whether an alternative design exists. *Id.* at 674.

■ Nevertheless, Defendant incorrectly argues that Plaintiffs *must* establish an alternative design to prevail.[4] While at the "heart" of the analysis, the Georgia Supreme Court clearly found that alternative designs were a factor that *may* be considered and not a requirement. *Id.* Although the Georgia Supreme Court placed great emphasis on alternative designs, alternatives are not the sole factor.

■ Specifically, the Georgia Supreme Court found that "no finite set of factors can be considered comprehensive or applicable under every factual circumstance, since such matters must necessarily vary according to the *unique facts of each case.*" *Id.* at 675. (emphasis added). While non-exhaustive, some factors to be considered include: the danger posed by the design; the state of the art at the time of manufacturing and compliance with governmental standards;[5] the feasibility of alternative designs; and the financial costs of improved designs. With these factors and others in mind, the Georgia Supreme Court noted and reaffirmed "that under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury." *Id.*

Accordingly, the above factors should be considered in determining the Defendant's potential liability on the unique facts of this case. The threshold question then is whether Defendant could reasonably manufacture a Ford Explorer that would ensure the safety of its occupants in collision forces exceeding 100 miles per hour. First, assuming arguendo that it is possible to manufacture such a vehicle, although no such possibility has been presented to this Court, the costs for such a design must be reasonable. As the Georgia Supreme Court aptly noted, "Although the benefits of safer products are certainly desirable, there is a point at which they are outweighed by the costs of attaining them." *Id.* at 674 (quoting *Hunt v. Harley–Davidson Motor Co.,* 147 Ga.App. 44, 46, 248 S.E.2d 15 (1978)). It is well known that even expensive race cars occasionally disintegrate and burst into flames following high-speed crashes. There comes a point, as stated above, when the circumstances of the crash itself rise to such an extreme level of violence that manufacturers cannot reasonably and cost-effectively protect consumers.

Defendant points to an analogous case in which the impact forces were extreme and severe as in the present case. *Binakonsky v. Ford Motor Co.,* 929 F.Supp. 915 (D.Md. 1996). The impact forces in *Binakonsky* rose to a level at which the manufacturer could not reasonably protect the consumer. Specifically, in *Binakonsky,* the plaintiff's husband was killed when the Ford E–150 van he was driving, while intoxicated, collided head-on with a tree at a speed in excess of forty miles per hour. *Id.* at 923. I note that, unlike the victims here, the egregious conduct of the driver in *Binakonsky* resulted in his own demise. At the same time, however, I also note for the determination of manufacturer liability that the speeds in the present case far exceeded the speeds in *Binakonsky.*

In *Binakonsky,* the plaintiff claimed that the decedent's death resulted from a defective design in the van's fuel system causing a post-impact fire. *Id.* at 917. Like *Banks,* the *Binakonsky* court looked at various factors in determining whether the defendant was liable for an alleged defective design. While the *Binakonsky* court employed a similar balancing test for reasonableness, it also analyzed the "style and type of vehicle, the

---

**4.** Plaintiffs have not offered an alternative safer design for the fuel or seat systems.

**5.** The *Banks* court noted that the issues of state of the art design and compliance with federal regulations are not conclusive to manufacturing

liability. *Banks,* 264 Ga. at 736 n. 6, 450 S.E.2d 671; *see also Doyle v. Volkswagenwerk Aktiengesellschaft,* 267 Ga. 574, 481 S.E.2d 518 (1997). However, it is noted that the Explorer did in fact meet the minimum government safety requirements.

particular purpose of the vehicle and its price," as well as the facts surrounding the collision. *Id.* at 922.

The *Binakonsky* court noted that the Ford E–150 van was an inexpensive vehicle designed with the driver's seat located closer to the front than in a standard vehicle in order to maximize passenger-compartment space. Furthermore, the *Binakonsky* court found that the price of the vehicle was an important factor in determining the reasonableness of design. Specifically, the court stated that "a Cadillac may be expected to include more in the way of both conveniences and 'crashworthiness' than [an] economy car." *Id.* at 923 (quoting *Dreisonstok v. Volkswagenwerk, A.G.* 489 F.2d 1066, 1073 (4th Cir.1974)). In its conclusion, the *Binakonsky* court held as a matter of law that the defendant could not reasonably have been expected to design the Ford E–150 van to withstand the forty mile per hour impact with the tree. While the *Binakonsky* court provided additional factors to analyze, more important, it established that at some point for any given vehicle a manufacturer cannot be liable for injuries resulting from high-speed collisions.

■ The *Binakonsky* court correctly considered the price and type of the vehicle in its determination. Here, the vehicle in question is a mid-priced sports utility vehicle. However, neither large and expensive Cadillacs nor small and economical Cavaliers could reasonably be expected to provide consistent protection to occupants subjected to the powerful forces of impact at speeds in excess of 100 miles per hour. Indeed, the resulting severe impact forces can readily be seen by any layperson from photographs in the record. For instance, as seen from above, the engine compartment is almost flush with the front windshield. As viewed from the side, the front passenger compartment of the four-door Explorer is substantially compacted.

■ Society cannot reasonably expect affordable passenger vehicles to be safe at collision speeds in excess of 100 miles per hour. I am confident that a reasonable juror could not find that the 1994 Ford Explorer's fuel and seat systems were defective in light of the extreme impact speeds and resulting forces of this terrible collision. Additionally,

Plaintiffs' claim for failure to warn must fail as well. As previously stated, as a matter of law Defendant is under no obligation to design and build a vehicle which will ensure the safety of its occupants in collisions at these speeds. Thus, it follows that there is no duty to warn consumers that head-on collisions with impact speeds in excess of 100 miles per hour are unreasonably dangerous. Such a warning would be seen by anyone as a foolish restatement of an obvious fact.

## B. PROXIMATE CAUSE

The Defendant's product was not the proximate cause of the victims' deaths in this case. Georgia law provides in products liability cases that the manufacturer's product must be the proximate cause of the injury. O.C.G.A. § 51–1–11. Specifically, the Code provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition *when sold is the proximate cause of the injury sustained.*

*Id.* (Emphasis added).

■ Under Georgia law, proximate cause must exist to establish a claim arising under strict liability or negligence. *Lamb v. Sears, Roebuck & Co.*, 1 F.3d 1184 (11th Cir.1993). While Plaintiffs allege that the Defendant's product was the proximate cause of the victims' deaths, Defendant points to Mr. Carr as the proximate cause. There can be, however, more than one proximate cause for an injury. *E.g., Smith v. Commercial Transp., Inc.*, 220 Ga.App. 866, 867, 470 S.E.2d 446 (1996). Thus, the fact that Mr. Carr's actions were a proximate cause of the victims' deaths is not altogether preclusive to the Plaintiffs' claim. *Id.* Nonetheless, there can be more than one proximate cause only "if the original negligent actor reasonably could have anticipated or foreseen the intervening act *and its consequences.*" *Id.* (emphasis added) (quoting *Perry v. Lyons*, 124 Ga.App. 211, 216, 183 S.E.2d 467 (1971)).

Thus, if the consequences of an intervening negligent act are unforeseen, then liability of the original negligent party is relieved. *Id.*[6]

It is obviously foreseeable that motor vehicle collisions will occur. Plaintiffs note that the maximum speed limit in Georgia is seventy miles per hour, and claim that the Defendant should be aware that high-speed collisions will and do occur. Although collisions are foreseeable, however, the same is not necessarily true for their consequences. For an original negligent party to be liable, the consequences of the intervening act must be foreseeable. *Id.* Accordingly, for a manufacturer to be liable for a defective product it must have knowledge of the probable consequences to its product in a given situation.

As stated previously, whether a manufacturer complies with the Federal Motor Vehicle Safety Standards (FMVSS) is not conclusive on the issue of liability. *Doyle v. Volkswagenwerk Aktiengesellschaft,* 267 Ga. 574, 481 S.E.2d 518 (1997). However, these standards are instructive in determining what consequences manufacturers should reasonably be aware of. Under the FMVSS, vehicles are required to be crash tested at speeds of thirty miles per hour into fixed barriers to determine the consequences of such collisions. 49 C.F.R. § 571.301. Defendant states that motor vehicle manufacturers do not conduct tests at collision speeds anywhere near 100 miles per hour because reliable testing at those speeds is not practical. Indeed, a great disparity exists between the speed at which the Government requires vehicles to be tested and the collision speeds in this case. Accordingly, I find that it is unreasonable to expect manufacturers to conduct crash testing at extremely high-speeds as in the 100 miles per hour collision here.

Generally, determinations of proximate cause are for the jury unless reasonable minds could not differ on the issue. *Smith,* 220 Ga.App. at 867, 470 S.E.2d 446. Plaintiffs have not proffered any evidence that Defendant Ford should have known or was actually aware of the probable *consequences* of this type of high-speed accident to its product. The only real evidence Plaintiffs have presented is that the Defendant should be aware that high-speed collisions occur. Accordingly, based upon the lack of evidence and the unreasonableness of testing at speeds in excess of 100 miles per hour, I find that reasonable minds could not differ on proximate cause. Accordingly, manufacturers cannot reasonably be expected to foresee the probable consequences of these high-speed collisions. Since the consequences are not reasonably foreseeable to the Defendant, I conclude as a matter of law that Mr. Carr's drunk driving was the sole proximate cause of the deaths sustained in the ensuing collision.

Accordingly, Plaintiffs cannot establish the liability of the Defendant as a matter of law. The remaining grounds raised by Defendant need not be addressed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiffs' Motion for Reconsideration of Order Transferring Case to Dublin Division and its Motion Requesting Oral Argument as to Defendant's Motion to Preclude Testimony are hereby **DENIED** as moot. Defendant's Motion to Preclude Testimony of Plaintiffs' Proposed Expert, Dr. Barbara Bart, and its Motion to Preclude the Testimony of Plaintiffs' Witnesses Identified in Plaintiffs' Second Amendment to Plaintiffs' Answers to Mandatory Interrogatories and Supplemental Responses to Ford's Interrogatories are hereby **DENIED** as moot. The clerk is instructed to **ENTER FINAL JUDGMENT** in favor of Defendant and **CLOSE** this case. The clerk is further instructed to assess costs against Plaintiffs.

---

**6.** It is unnecessary to be aware of the exact consequences for liability to attach. *E.g., Medi–Clean Serv., Inc. v. Hill,* 144 Ga.App. 389, 392, 241 S.E.2d 290 (1977). However, making all components of a vehicle crashworthy at these high speeds logically requires some knowledge of a collision's effect on the components.