NIEMEYER, Circuit Judge,
dissenting:
The majority opinion rules, by implication, that an automobile manufacturer has a duty to design its automobiles to withstand risks of injury from a head-on collision with an oak tree at a speed of 40-47 miles per hour. Because I believe that the majority’s holding in this case imposes a duty far greater than that imposed by Maryland law, I dissent.
In August 1992, David Binakonsky, driving his four-year old Ford E-150 van at approximately 65 miles per hour in a 30 mile per hour zone, missed a turn and drove through a wooded area head-on into an oak tree, 20 inches in diameter. Binakonsky’s speed at the time of the collision was estimated by experts for both parties to have been between 40 and 47 miles per hour. Binakon-sky’s blood-alcohol content at the time of the collision was between .14% and .16%, indicating that he was drunk. Moreover, Binakon-sky was driving without a license and without insurance.
The impact occurred in the center front of the van so that the sides of the van wrapped around- the tree, forming a sharp V in the center front bumper area. The tree penetrated the front of the vehicle two to three feet, driving the engine rearward, seriously damaging all of the major components of the vehicle and rupturing the fuel line. The spilling gasoline caught fire, and Binakonsky was dead by the time he was removed from the vehicle. His family contends that the fire caused his death, while Ford contends that he was killed upon impact with the tree.
In claiming that Ford sold a van that was defectively designed, the Binakonsky family contends that Ford “designed, manufactured and located the fuel injection lines, connections, and inertia fuel shut-off switch in a negligent and defective fashion, such that their integrity could not, and did not, survive the frontal collision.” They also contend that the van “was not equipped with an anti-siphoning device to prevent fuel from flowing to the front of the vehicle in the event the fuel lines were broken.”
*292 With the introduction of electric fuel injected engines in 1988, Ford began using nylon instead of steel for its fuel lines. Ford states that it selected nylon because nylon was superior to steel in delivering cool, clean fuel under pressure to fuel injectors. Ford points out that the van was equipped with an “inertia switch,” which is a mechanical device that acts as a fail-safe mechanism to shut off fuel flow in the event of an impact. Ford contends that it was and remains today the only domestic manufacturer of automobiles to incorporate this safety device into the design of its vehicles. The Binakonsky family argues that notwithstanding that safety feature designed to minimize the spilling of gasoline, Ford should have installed a slider valve at the orifice of the fuel tank to prevent gasoline from flowing out of the tank in the event that the fuel lines were severed in a collision. They acknowledge, however, that no passenger vehicle — car, van, or truck — incorporated this feature in 1988, or at any time before or since.
The district court granted Ford summary judgment holding that
Defendant Ford had no duty to design the fuel system of an E-150 van in such a way that it would withstand a high speed, head-on crash into a large tree brought about by an inebriated driver.
929 F.Supp. 915, 924. The court explained that the fuel cut-off switch in this particular vehicle could hardly have been expected to operate properly in a collision of this magnitude, which imposed a force on Binakonsky’s body equivalent to his jumping out of a seven-story window. Id. at 924 & n. 9. Interpreting the duties imposed by Maryland law, which in turn incorporates strict liability as stated in § 402A of the Restatement (Second) of Torts, the district court concluded that as a matter of law “the design of this van was not unreasonably dangerous.” Id. at 925.
I do not take issue with the majority opinion’s summary of Maryland law and the fact that Maryland has adopted Restatement (Second) of Torts § 402A (imposing strict liability). As the majority opinion notes, Maryland law requires that a manufacturer design products so as not to be “unreasonably dangerous” to the consumer, and a product is unreasonably dangerous when it is dangerous “to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.” Phipps v. General Motors Corporation, 278 Md. 337, 344, 363 A.2d 955, 959 (1976). The majority opinion also correctly notes that Maryland recognizes a misuse defense to strict liability, summarized by Maryland courts as follows:
[I]f the product is not unreasonably dangerous when used for a purpose and in a manner that is reasonably foreseeable, it simply is not defective, and the seller will not be hable.
Misuse of a product may also bar recovery where the misuse is the sole proximate cause of damage, or where it is the intervening or superseding cause.
Ellsworth v. Sherne Lingerie, Inc., 303 Md. 581, 596, 495 A.2d 348, 355 (1985) (footnotes omitted).
Applying these principles, I agree with the district court that as a matter of law the Ford van was not defectively designed. Ford used the latest technology in the design of the fuel system on the van in question, and it incorporated a safety feature that no other manufacturer had adopted, the inertia switch which stops the flow of electrical power to the vehicle’s fuel pump, in the event of an impact. The slide valve that plaintiffs maintain in retrospect should have been employed has never been incorporated into any vehicle, before or since the collision in this case. If the plaintiffs theory that strict liability requires manufacturers to install slide valves in fuel tanks has merit, then all vehicles on the road today are defectively designed. While collisions are foreseeable, the law does not require a manufacturer to design a motor vehicle to withstand any collision; there is a magnitude of collision beyond which it can no longer be said that the vehicle is being “used for a purpose and in a manner that is reasonably foreseeable.” Ellsworth, id.
To rule that this case presents a jury question, the majority states, “We cannot say that a car crashing into a tree at as high as 47 miles per hour is ‘unquestionably bi *293 zarre.’ ” Slip op. at 288. This, I respectfully submit, misses the issue. The question is not whether an accident is so bizarre as not to be foreseeable, but whether the risk of injury or death is reasonably foreseeable if a design feature is not adopted. Applied to this ease, the question is whether it was foreseeable that a slide valve, which has never been used in any motor vehicle, could reasonably have prevented Binakonsky’s death. I submit that as a matter of law we must say that this goes beyond foreseeability and into rank speculation. In order to anticipate that such a valve would reasonably have participated in Binakonsky’s death, Ford would have had to assume:
1. That Binakonsky could survive a head-on crash with a tree at 47 miles per hour;
2. That the gas tank would survive such a crash and retain the gasoline in it;
3. That the slide valve would survive sufficiently intact as to contain the gasoline;
4. That the fuel pump would not shut off; and
5. That a fire from some other source or that some other post-collision condition would not have killed Binakonsky.
In speculating about such remote possibilities, and others, we would then have to decide whether such a duty applies if the vehicle were driven into a tree, say, at 65 miles per hour, or 85 miles per hour. There must be a legally established limit to a manufacturer’s duty. I believe that that limit should be set at a speed where the risk of death can meaningfully be addressed by the design feature at issue.
I find it difficult to conclude that we must assume, in imposing duties of design, that any human-being will survive the impact of a fall from a seven-story window — the force that Binakonsky was exposed to in this case. If we cannot reasonably foresee that Bina-konsky would, except in freakish circumstances, have survived such an impact, we certainly cannot impose a duty on a manufacturer to design a vehicle to prevent post-collision injury from a cause other than the collision itself.
I believe that the holding made by the majority applies a clinical rule in a formulaic way, without considering the common sense factors that must come into play. Rules developed in this manner are antagonistic to the law’s role in preserving the manufacturer’s duty to produce practicable and desirable safety devices without destroying their ability to continue to develop consumer products. No product can withstand the scrutiny of an absolute safety standard. Yet, that is the direction in which the majority opinion unfortunately is headed.
For these reasons, I would affirm the judgment of the district court.